## A05A0527. O'NEAL v. THE STATE.
(616 SE2d 479)

RUFFIN, Chief Judge.

Following a bench trial, the trial court found Ronald O'Neal guilty of possessing cocaine with intent to distribute and possessing

---

a firearm after having been convicted of a felony. In his sole enumeration of error on appeal, O'Neal contends that the trial court erred in denying his motion to suppress. For reasons that follow, we affirm.

In reviewing a trial court's ruling on a motion to suppress, we construe the evidence in a light most favorable to upholding the lower court's findings and judgment.[1] We adopt the trial court's findings on disputed facts and credibility unless clearly erroneous.[2] "[S]ince the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them."[3]

Viewed in this manner, the record shows that on December 10, 2003, Officer D. J. Small was investigating alleged drug activity in a neighborhood known for "a high volume of drug activity." He and another officer were conducting surveillance on one particular house when they noticed unusual activity at the neighboring house. Small testified that he saw two or three pedestrians walk to the side of the house, and return "just a second later to the driveway, at which time [the pedestrian] would be greeted by somebody inside the house who would come out, talk to the pedestrian, . . . walk to the rear of the residence, [and then] . . . walk back to the driveway and make a transaction with the pedestrian."

After several of these transactions had taken place, Small saw a man and woman repeat the pattern, but return with a shopping bag that appeared to contain packaged sausage. Immediately thereafter, O'Neal pulled up to the house in a black Cadillac. O'Neal exited the car, took the bag of sausage, and got back in the Cadillac. Given the prior transactions, the officers were suspicious of O'Neal. Thus, while his car was stopped, officers pulled behind him in a patrol car with lights and siren activated, and an officer walked up to O'Neal's car.

The officer asked O'Neal for his driver's license and insurance card, and he asked if O'Neal had any weapons in the car. Small testified that

> O'Neal appeared rather nervous. Instead of making eye contact with us and answering our questions . . . [h]e looked down toward the driver's side floorboard, and instead of responding right away, no, I don't have a gun, he hesitated and mumbled a couple of times, no, I don't, which kind of raised our suspicion that he was possibly armed. So at that

---

[1] See *Gary v. State*, 268 Ga. App. 773, 774 (1) (603 SE2d 304) (2004).
[2] See id.
[3] Id.

time, [the supervising officer] asked Mr. O'Neal to step from the car.

As O'Neal exited the car, the supervising officer shined a flashlight into the car and saw a gun partially underneath the car seat on the floorboard. O'Neal then stated that he had a gun under the seat and that he had drugs in his pocket. A subsequent search of O'Neal yielded approximately 27 grams of cocaine.

O'Neal moved to suppress the evidence that was seized from him, arguing that the stop and subsequent search of him were illegal. The trial court denied the motion, finding that "under the totality of the circumstances the officers had a necessary basis to form . . . an articulable suspicion that the defendant was engaged in criminal activity and, therefore, the detention was not arbitrary or harassing."

On appeal, O'Neal contends that the police lacked "a particularized and objective basis for suspecting [him] of criminal activity when they stopped him." He also asserts that, once he had been stopped, his nervousness did not justify the further intrusion of requiring O'Neal to exit his car. We disagree.

There are at least three tiers of police-citizen encounters: (1) consensual encounters; (2) brief investigatory stops that require reasonable suspicion; and (3) arrests that must be supported by probable cause.[4] The State argues that, initially, the encounter with O'Neal was a first-tier encounter because he was in a stopped vehicle, and "[i]t is well established that an officer's approach to a stopped vehicle and inquiry into the situation are not a 'stop' or 'seizure' but rather clearly fall within the realm of the first type of police-citizen encounter."[5] Here, however, there is no evidence that O'Neal's car was parked, and the police utilized their flashing blue lights. Thus, we are not persuaded that the encounter was merely a first-tier encounter.[6]

Nonetheless, as the circumstances of this case warranted a second-tier encounter, we find no basis for reversal. Such encounter may violate the Fourth Amendment if the officer "stops" or "seizes" a citizen without articulable suspicion.[7] "Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity."[8]

---

[4] See *Buchanan v. State*, 259 Ga. App. 272, 274 (576 SE2d 556) (2003).

[5] (Punctuation omitted.) *Carrera v. State*, 261 Ga. App. 832, 834 (584 SE2d 2) (2003).

[6] See *Holmes v. State*, 252 Ga. App. 286, 288 (556 SE2d 189) (2001) (where police initiated flashing blue lights and required defendant to step from car, the interaction was second-tier encounter).

[7] See *State v. Causey*, 246 Ga. App. 829, 831 (1) (540 SE2d 696) (2000).

[8] Id.

As noted by O'Neal, nervousness, standing alone, does not give rise to reasonable, articulable suspicion.[9] Here, however, the officers observed more than O'Neal's mere nervousness before deciding to briefly detain him. Specifically, the officers were conducting surveillance in a neighborhood known for its drug activity. The officers also witnessed what they believed to be drug transactions taking place at a house in that neighborhood. The officers also saw O'Neal drive to that house and interact briefly with individuals suspected of selling drugs. When the officers approached O'Neal, his nervousness added to the officers' suspicion.

In determining whether the officers had articulable suspicion to stop a citizen, we look to the totality of the circumstances.[10] Here, the totality of the circumstances gave rise to articulable suspicion and justified the officers' detention of O'Neal.[11] Accordingly, the trial court did not err in denying O'Neal's motion to suppress.[12]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JUNE 1, 2005 —
RECONSIDERATION DENIED JUNE 16, 2005 — 

*Homer Robinson*, for appellant.
*Jeffrey H. Brickman, District Attorney, Elisabeth G. MacNamara, Assistant District Attorney*, for appellee.

---

[9] See *Holmes*, supra at 289.
[10] See *Causey*, supra at 832 (1) (b).
[11] See id.; *Vaughn v. State*, 247 Ga. App. 368, 369-370 (1) (543 SE2d 429) (2000).
[12] See id.